Robinson, J.
 

 This is an action in mandamus, brought by the state of Ohio on relation of the city of Columbus, against the budget commission of Franklin county. The petition alleges the official character of the various parties, and further alleges that on September 9, 1927, the director of health of the state of Ohio, under authority of Sections 1250 and 1251, General Code, issued orders, approved by the public health council of the state, requiring the city of Columbus to install necessary works or means for collecting and disposing of the sewage of the city, to correct and prevent the pollution of the Scioto river and of Alum creek, caused by the discharge of such sewage into those streams; that on October 11, 1929, the director of health extended the time within which compliance with such order must be made; that pursuant to and in partial performance of such orders, the city of Columbus, prior to 1931, did construct sewers and appurtenances thereto, at an expenditure of approximately $5,000,000, financed by a special tax levy and bond issues; that on December 8, 1930, pursuant- to a resolution duly adopted by the council of the city, it made application to the tax commission of Ohio, in compliance with the provisions of Section 1259-1, General Code,
 
 “for authority to raise additional funds with which to carry out said
 
 orders;”' that ■thereafter such proceedings were had that on Dé
 
 *384
 
 eember 23, 1930, the tax commission of Ohio certified to the director of health of the state of Ohio that the city of Columbus is unable, without a vote of the electors of such city, to comply with the provisions of Section 1259, General Code, by reason of existing debts and limitations; that the director of health of the state, on December 23, 1930, found that an emergency exists in the city, requiring the immediate issue of bonds in order to carry out the orders theretofore made by such director of health; that on December 30, 1930, s,uch finding of the director of health was approved by the Governor of the state; that on December 31, 1930, such finding of the director of health and approval by the Governor was certified to the mayor of the city, and on January 5, 1931, was filed with the council of the city; that on January 14,1931, and prior thereto, and at the present time, the net indebtedness of the city, created or incurred without a vote of the people, was and is in excess of one per cent, of the total value of all the property within such city as listed and assessed for taxation, and that prior thereto and at the present time is less than five per cent, of the total value of the property in such city as listed and assessed for taxation; that on January 5, 1931, an ordinance entitled “To provide for the issue of bonds to pay the cost and expense of constructing sewage treatment works, outfall sewers, sewage pumping station and other appurtenances' necessary in connection with said works, including the purchase of the necessary land and rights-of-way therefor, for the purpose of complying with the order of the Director of Health of the State of Ohio, as herein provided, in the sum of six and one-half million dollars, of which one
 
 *385
 
 hundred thousand dollars shall be presently issued,” was introduced in council of the city, and, on January 14, 1931, duly passed by such council; that in pursuance to such ordinance, bonds in the sum of one hundred thousand dollars, dated February 15, 1931, were sold March 9, 1931, by the city; that on or about July 15, 1931, the council of the city duly adopted a tax budget for the next succeeding fiscal year, which budget was submitted to the county auditor of Franklin county on or before July 20, 1931; that in such submitted budget the necessary interest and sinking fund charges on such bond issue of one hundred thousand dollars were placed outside the fifteen mill limitation, as provided by Section 1259-1, General Code; that the budget commission of Franklin county, at its statutory meeting for the year 1931, placed the interest and sinking fund charges for such issue of bonds for the year 1932 within the fifteen mill limitation; that such placing of such interest and sinking fund charges within the fifteen mill limitation is contrary to law, especially to the provisions of Section 1259-1, General Code, and that such interest and sinking fund charges should be placed outside the fifteen mill limitation; avers that it has no adequate remedy in the ordinary course of law, and prays for a writ requiring the budget commission to approve and place the levy necessary to provide payment of interest and sinking fund charges on such bonds outside the fifteen mill limitation.
 

 To this petition the defendant filed a general demurrer.
 

 The controlling question in this case is whether the bonds provided for in the ordinance were “au
 
 *386
 
 thorized” within the meaning of the schedule to Section 2 of Article XII of the Constitution of Ohio, prior to the effective date of such section. Section 2 reads, in part:
 

 “No property, taxed according to value, shall be so taxed in excess of one and one-half per cent of its true value in money for all state and local purposes, but laws may be passed authorizing additional taxes to be levied outside of such limitation, either when approved by at least a majority of the electors of the taxing district voting on such proposition, or when provided for by the charter of a municipal corporation.”
 

 The schedule thereto provides, in part: “If the votes for the proposal shall exceed those against it, the amendment shall go into effect January 1, 1931, and original Sections 2 and 3 of Article XII of the constitution of the state of Ohio shall be repealed and annulled; but all levies for interest and sinking fund or retirement of bonds issued, or authorized prior to said date which are not subject to the statutory limitation of fifteen mills on the aggregate rate of taxation then in force, * * * shall not be subject to the limitation of fifteen mills established by said amendment; and levies for interest and sinking fund or retirement of bonds issued or authorized prior to said date, shall be outside of said limitation to the extent required to equalize any reduction in the amount of taxable property available for such levies * * *.”
 

 No election has been had upon the issue of such bonds, and the charter of the city does not provide for their issue outside the fifteen mill limitation.
 

 If the order issued by the director of public health
 
 *387
 
 on September 9, 1927, plus the extension of the time within which compliance with such order was required to be made, the application of the council to the tax commission
 
 for authority to raise additional funds,
 
 the certificate of the tax commission to the director of health that the city is unable without a vote of the electors to comply with the provisions of Section 1259, General Code, the finding of the director of health that an emergency exists in the city requiring the immediate issue of the bonds in order to carry out his orders theretofore made, the approval of the Governor of the state of such finding, and the certification of such finding to the mayor of the city on December 31, 1930, does not constitute an authorization of the bond issue in question, within a correct interpretation of the language and the schedule to Section 2 of Article XII of the Constitution, then the demurrer to the petition must be sustained, for the limitation of the Constitution must obtain unless saved by the schedule.
 

 Section 1259, General Code, imposes upon municipal councils, in their respective jurisdictions, the duty to secure funds for such purpose by tax levies, sale of bonds, or otherwise. It reads:
 

 “Each municipal council, department or officer having jurisdiction to provide for the raising of revenue by tax levies, sale of bonds, or otherwise shall take all steps necessary to secure the funds for any such purpose or purposes. When the funds are secured, or the bonds therefor have been sold in accordance with law such funds shall be considered as in the treasury and appropriated for such particular purpose or purposes, and shall not be used for any other purpose. Contracts for expenditure
 
 *388
 
 from such funds shall not be valid unless approved by the director of health.”
 

 Section 1259-1 provides, in part: “If the tax commission of Ohio certifies to the director of health that the municipal corporation is unable to comply with the provisions of the foregoing section without a vote of the electors by reason of existing debt and tax limitations, the director of health may find that an emergency exists requiring the immediate issue of bonds. When such finding approved by the governor is certified to the taxing authority of the municipality, it shall, first, provide such funds as can be provided without a vote of the electors; second, issue bonds without such vote which bonds shall be outside of the
 
 1%
 
 limitation provided by Section 2293-14 of the General Code * # *.”
 

 Section 1260 provides: “If a council * * * refuses for a period of thirty days, after notice given him or them by the commissioner of health of his findings and order and the approval thereof by the public health council, to perform any act or acts required of him or them by this chapter relating to stream pollution and public water supply, the members of such council * * # shall be personally liable for such default, and shall forfeit and pay to the state of Ohio five hundred dollars to be paid into the state treasury to the credit of the general revenue fund.”
 

 It is the contention of the relator that, upon the certification of the director of health, approved by the Governor, it became the mandatory duty of the council of the city to enact the necessary legislation for the issuance of bonds in the sum of $6,500,000, for the purpose of carrying out the order of the
 
 *389
 
 director of health, and, therefore, since the members of council were left without choice or discretion, that the enactment of the necessary legislation by it would be ministerial in character and the authorization of the bond issue by the director of health could not be defeated by the failure of council to perform its ministerial duty.
 

 The following is a copy of the certificate of the tax commission of Ohio to the director of health:
 

 The tax commission of Ohio, pursuant to Section 1259-1 of the General Code of Ohio, found and certified “that the City of Columbus, Ohio, is unable, without a vote of the electors of said City, to comply with the provisions of Section 1259, G. C., and an order issued by the Director of Health and approved by the Public Health Council, September 9, 1927, requiring said City of Columbus to install such works or means as may be necessary to provide for the proper disposal of the sewage of said City so as to correct and prevent the pollution of Alum Creek and the Scioto Eiver caused by the discharge of its sewage into said creek and river by said city.”
 

 The certificate of the director of public health, • approved by the Governor, reads as follows:
 

 “Whereas, An order was made by the Director of Health on September 9, 1927, and approved by the Public Health Council, requiring the City of Columbus to install such works or means as may be necessary for collecting and disposing of the sewage of the city in a manner to correct and prevent the pollution of Alum Creek, caused by such sewage; and
 

 “Whereas, An order was made by the Director of Health on September 9, 1927, and approved by the Public Health Council, requiring the City of Colum
 
 *390
 
 bus to install such works or means as may be necessary for collecting and disposing of the sewage of the city in a manner to correct and prevent the pollution of the Scioto Biver caused by such sewage; and
 

 “Whereas, plans have been made, contracts have been awarded, and collecting sewers and storm standby tanks are now under construction by the City of Columbus with funds heretofore provided by tax levy and by a bond issue under the provisions of Section 1259-1 of the General Code; and
 

 “Whereas, preliminary plans and estimates of cost have been prepared by the City for the construction of sewage treatment works, outfall sewers, a sewage pumping station and equipment, and other necessary appurtenances, including the purchase of land and rights-of-way therefor, all of which will require funds in addition to those heretofore provided; and
 

 “Whereas, The Tax Commission of Ohio on the 23rd day of December, 1930, has certified to me, as Director of Health of the State of Ohio, that after due and proper examination the financial status of said City of Columbus, Ohio, in order to determine its existing debt and tax limitations has found, pursuant to Section 1259-1 of the General Code of Ohio, that said city is unable to comply with the provisions of Section 1259, G. C., and the orders of the Director of Health made September 9, 1927, and above referred to, without a vote of the electors of said City; therefore,
 

 “I do hereby find, in accordance with the provisions of Section 1259-1 of the General Code of Ohio, that an emergency exists in the City of Columbus,
 
 *391
 
 Ohio, requiring the immediate issue of bonds in order to proceed with the construction of sewage treatment works, outfall sewers, sewage pumping station and equipment, and other necessary appurtenances, including the purchase of land and rights-of-way, all of which is required to collect and dispose of the sewage of the City in a manner to correct and prevent the pollution of Alum Creek and the Scioto River, caused by the sewage from said city.”
 

 Approved by the Governor, December 30, 1930.
 

 This certificate was certified to the mayor of the city of Columbus, Ohio, December 31, 1930.
 

 We pass the question of the sufficiency of the service of the certificate of the director of health and the approval of the Governor upon the mayor instead of upon the council of the municipality.
 

 Neither the tax commission nor the director of health is authorized to determine the character, extent or cost of the improvement, nor to finance the same by an issue of bonds, or a levy of a tax. Nor are they, or either of them, authorized to act for the municipality upon the failure or refusal of the proper officers of the municipality to act. The full extent of the authority of the tax commission in the premises is to determine the ability of the municipality to make additional levies within a limitation fixed by statute, and to certify its finding in that respect to the director of health. The full authority of the director of health, after having ordered the improvement, is to fix the time within which the improvement shall be made, to approve or disapprove the plans therefor, and to enforce his order by the penal provisions of Section 1260, General Code, and, in the event that the tax commission certifies to him
 
 *392
 
 the inability of the municipality to comply with his orders in respect to such improvement by reason of existing obligations of the municipality, to determine whether an emergency exists; and, if he so determine, he has, with the approval of the G-overnor, authority to authorize the municipality to exceed the statutory tax limitation, without submitting the levy to a vote of the electors.
 

 The net result of the investigation made by the tax commission, its certification of its finding to the director of health, the finding of the director of health that an emergency exists, the approval of the Governor, and the certification of such finding and approval to the council, was to empower the legislative branch of the municipality to act in the premises free from the limitation which the statute, but for such action, imposed.
 

 The amendment to the Constitution of Ohio, Section 2 of Article XII, having become effective on January 1, 1931, and the bonds not having been “authorized” by the only body having the power to authorize them until January 14, 1931, they are not within the saving provisions of the schedule to Section 2 of Article XII of the Constitution.
 

 The demurrer to the petition will be sustained and the writ denied.
 

 Demurrer sustained and writ denied.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Kinkade, JJ., concur.